Argued and submitted March 29, 2011, affirmed August 15, 2012

In the Matter of
Sheryl J. Otwell, Claimant.
SAIF CORPORATION
and Malheur County School District #84,
*Petitioners,*

*v.*

Sheryl J. OTWELL,
*Respondent.*

Workers' Compensation Board
0901009; A144868

284 P3d 581

David L. Runner argued the cause and filed the briefs for petitioners.

David W. Hittle argued the cause for respondent. With him on the brief was Swanson, Lathen, Alexander, McCann & Prestwich.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

* Brewer, J., *vice* Rosenblum, J.

ORTEGA, P. J.

### ORTEGA, P. J.

SAIF Corporation seeks judicial review of a Workers' Compensation Board order on reconsideration of a notice of closure that extended temporary total disability (TTD) benefits beyond the effective end date stated in SAIF's combined condition claim denial. The issue on judicial review is whether the effective end date of TTD benefits stated in SAIF's claim denial precludes the board from altering that date on reconsideration of the notice of closure related to the claim denial. SAIF contends that the board lacks such authority because the effective end date of TTD benefits can only be addressed in the appeal proceeding involving the claim denial. We conclude that the statutory scheme authorizes the board to make such a modification on reconsideration of the notice of closure. Accordingly, we affirm.

## I. BACKGROUND

To provide context for the legal question presented on review, we take the following facts from the board's order. After slipping and falling at work, claimant experienced low back pain and filed a workers' compensation claim in September 2007 for a low back condition. Initially, SAIF denied the claim, but later accepted it as a combined condition effective the date of the injury.[1] Claimant underwent back surgery in May 2008, and on August 13, 2008, her attending doctor released her to modified duty. Later, at SAIF's request, Dr. Carr performed an insurer medical examination. His subsequent report contained contradictory information as to the date that claimant's injury became medically stationary. On the one hand, Carr opined that claimant became medically stationary "about two months" after her May 7, 2008, surgery when she reported that her symptoms had "plateaued out"—that is, about July 5, 2008. However, he also reported that claimant placed the date that her symptoms "plateaued out" slightly later than that, around August 1, 2008. Thus, there was about a 26-day difference between the possible medically

---

[1] The accepted combined condition was a L4-L5 disc herniation combined with preexisting degenerative disc disease at L4-L5, and L5 radiculopathy combined with preexisting degenerative disc disease at L4-L5.

stationary dates as described by Carr, and his report did not resolve that apparent contradiction.

On December 4, 2008, SAIF issued a combined condition denial stating that as of July 5, 2008—the earlier of the dates referenced in Carr's report—the otherwise compensable injury was no longer the major contributing cause of claimant's disability or need for treatment, *i.e.*, the "major cause shift date." Claimant, pursuant to ORS 656.283(1),[2] requested a hearing regarding that denial. That hearing had not been held as of the time SAIF sought judicial review in this case, but on December 18, 2008, SAIF issued a notice of closure pursuant to ORS 656.268(1)(b),[3] informing claimant of SAIF's award of permanent disability and TTD benefits and concluding that claimant's condition was medically stationary on August 1, 2008. SAIF awarded TTD benefits at various periods through July 5, 2008. Claimant requested reconsideration of the notice of closure under ORS 656.268(5)(c),[4] contesting the effective end date of TTD benefits, the medically stationary date, and arguing that SAIF prematurely closed the claim.

On reconsideration of the notice of closure, the Appellate Review Unit of the Department of Consumer and Business Services (DCBS), *see* ORS 656.268(6)(d) (providing that a "special evaluation appellate unit" within DCBS will perform the reconsideration proceeding), issued an

---

[2] ORS 656.283(1) provides:

"Subject to ORS 656.319, any party or the Director of the Department of Consumer and Business Services may at any time request a hearing on any matter concerning a claim, except matters for which a procedure for resolving the dispute is provided in another statute, including ORS 656.704."

[3] ORS 656.268(1) states, in part:

"The insurer or self-insured employer shall close the worker's claim, as prescribed by the Director of the Department of Consumer and Business Services, and determine the extent of the worker's permanent disability * * * when:

"* * * * *

"(b) The accepted injury is no longer the major contributing cause of the worker's combined or consequential condition or conditions pursuant to ORS 656.005(7)."

[4] ORS 656.268(5)(c) states, in relevant part: "If a worker, insurer or self-insured employer objects to the notice of closure, the objecting party first must request reconsideration by the director under this section."

order modifying the notice of closure to reflect a medically stationary date of October 15, 2008, and also awarded TTD benefits through that date. SAIF, pursuant to ORS 656.268(6)(g),[5] objected to the reconsideration order and requested a hearing to contest claimant's entitlement to TTD benefits from July 6 to October 15, 2008. The administrative law judge (ALJ) affirmed the order on reconsideration, and SAIF requested board review of the ALJ's decision. *See* ORS 656.289(3) (providing for board review of ALJ orders pursuant to ORS 656.295).

SAIF argued to the board that the ALJ erred in concluding that the effective end date of claimant's TTD benefits was not limited to July 5, 2008, under the terms of SAIF's combined condition denial. The board, after reviewing the medical evidence in the reconsideration record, concluded that claimant was entitled to TTD benefits through August 1, 2008, and, in doing so, it apparently resolved the contradiction in Carr's report in favor of claimant. In rejecting SAIF's argument that it was bound by the date in the claim denial, the board, relying on its prior decisions, explained that an insurer's "assertions" in a "non-final retroactive combined condition denial" were not binding in the notice of closure proceeding. As a result, the board concluded that it could determine the extent of TTD benefits based on the medical record on reconsideration, particularly where

> "the determination of entitlement to temporary disability, based on an evaluation of the medical record, pertains to temporary disability authorization related to the accepted compensable injury portion of the claim at the time of claim closure."

Ultimately, the board modified the effective end date of TTD benefits from October 15, 2008 to August 1, 2008. SAIF petitioned for judicial review, contending that the board erred in not upholding July 5, 2008, as the effective end date for claimant's TTD benefits.

---

[5] ORS 656.268(6)(g) provides: "If any party objects to the reconsideration order, the party may request a hearing under ORS 656.283 within 30 days from the date of the reconsideration order."

## II. ANALYSIS

On judicial review, SAIF reiterates its view that the correctness of the "major cause shift date" in the combined condition denial may only be decided in proceedings related to the claim denial. That is, according to SAIF, the "allegations in a combined condition denial are effective immediately and are not subject to review or modification in the proceeding on the notice of closure," such that the board is bound by the terms of the combined condition denial in any review of the notice of closure. Accordingly, SAIF contends that the board erred as a matter of law when it modified the effective end date of TTD benefits in its order.

SAIF argues that the statutory scheme supports its position that the legislature intended to limit the review of the effective end date of TTD benefits to the claim denial review process. In short, SAIF contends that the statutes establish separate tracks for review of combined condition denials and notices of closure. Moreover, SAIF asserts that allowing the board to change the effective end date of TTD benefits on reconsideration of the notice of closure could lead to conflicting decisions in the separate proceedings, particularly because the record in each type of proceeding may be different. *See* ORS 656.268(6), (7) (outlining the scope of the record on reconsideration). SAIF also claims that a claimant's right to TTD benefits is fully protected in the claim denial review process because if the combined condition denial is ultimately set aside on review of the claim denial, ORS 656.262(7)(c) requires the insurer to reopen the claim for processing. Once the claim is reopened, the insurer must pay any additional TTD benefits due by virtue of the combined condition denial being set aside. Finally, SAIF asserts that, if the board's actions in this case are allowed to stand, it would predetermine the outcome of the issue in the claim denial proceedings as to the effective end date of TTD benefits by conclusively establishing that the major cause shift date in the denial was incorrect.

As to the board's reasoning that it was authorized to modify the effective end date of TTD benefits because the claim denial was not yet "final," SAIF disagrees, pointing

to ORS 656.262(2), which states, in pertinent part, "the compensation due under this chapter shall be paid *** to the [claimant] *** except where the right to compensation is denied by the insurer or self-insured employer." According to SAIF, the text of ORS 656.262(2) establishes that, once a denial is issued, the claimant's entitlement to compensation on the denied claim stops unless, and until, that denial is set aside on review of the claim denial.

Claimant responds that the statutory scheme provides an injured worker with the right to request reconsideration of a notice of closure on all issues related to the closure, including the duration of TTD benefits. Claimant maintains that nothing in the statutory scheme limits the authority of the director of DCBS, the ALJ, or the board to consider all aspects of the closure, including the duration of TTD benefits, and to modify those dates if required by the evidence.

We begin with an overview of the applicable statutes. In a case such as this, where the accepted injury is no longer the major contributing cause of the claimant's combined condition, the insurer must issue a written denial of the accepted claim to the claimant. ORS 656.262(7)(b). In addition, the insurer is directed to close the claimant's claim and, to the extent possible, determine the degree of the claimant's permanent disability. ORS 656.268(1)(b). When the insurer determines that the claim qualifies for closure, it must issue an updated notice of acceptance that specifies the compensable conditions. ORS 656.262(7)(c). Even if the claimant objects to the updated notice or appeals the claim denial, the insurer is authorized to close the claim under ORS 656.268. *Id.* When closing a claim, ORS 656.268 requires the insurer to issue a notice of claim closure that informs the claimant of, among other things, the

"amount of any further compensation, including permanent disability compensation to be awarded; *of the duration of temporary total or temporary partial disability compensation*; of the right of the worker to request reconsideration by the director under this section within 60 days of the date of the notice of claim closure; of the right of the insurer or self-insured employer to request reconsideration by the director under this section within

seven days of the date of the notice of claim closure; of the aggravation rights; and of such other information as the director may require[.]"

ORS 656.268(5)(a)(B) (emphasis added).

A party may seek reconsideration of the notice of closure under ORS 656.268(5)(c), which provides:

"If a worker, insurer or self-insured employer *objects to the notice of closure*, the objecting party first must request reconsideration by the director under this section. * * * A request for reconsideration by an insurer or self-insured employer may be based only on disagreement with the findings used to rate impairment and must be made within seven days of the date of the notice of closure."

(Emphasis added.) After the order on reconsideration is issued, a party may object and request a hearing before an ALJ under ORS 656.283. The ALJ must issue an order after the hearing, which is subject to review by the board if requested under ORS 656.289(3).

We conclude that the statutory scheme allows for the duration of TTD benefits to be addressed on reconsideration of the notice of closure. ORS 656.268(5)(a) requires that the notice of closure must designate specific substantive benefits related to claimant's compensation for the accepted injury. Included in that requirement is that the insurer must explicitly designate the "duration of temporary total or temporary partial disability compensation." ORS 656.268(5)(a)(B). The claimant has the right to seek reconsideration if the claimant "objects to the notice of closure" and that right is not qualified in any way. Given the absence of any limitation in the statutory text on the claimant's right to seek reconsideration, it is axiomatic that the scope of reconsideration may include a challenge to any of the substantive benefits that must be included in the notice of closure, including the duration of temporary total disability compensation. *Cf.* ORS 656.268(5)(c) (The insurer may seek reconsideration "based only on disagreement with the findings used to rate impairment[.]"). In simple terms, the notice of closure must inform the claimant of the extent of substantive benefits awarded at the time the claim is closed and the claimant has an unqualified right, pursuant to ORS

656.268, to seek reconsideration of the benefits specified in the notice. Otherwise the right to seek reconsideration would be illusory.

Further, we are not persuaded that the mere existence of a separate review track for claim denials indicates that the legislature intended to preclude the board from addressing the duration of TTD benefits on reconsideration of a notice of closure. For one, the reconsideration process is suited to address the correctness of the substantive benefits that are designated in the notice of closure. Claimant's claim had been accepted, and the written denial was issued by SAIF because the accepted injury was no longer the major contributing cause of claimant's combined condition. The accepted injury remains compensable but must be closed under ORS 656.268. And at closure, claimant's right to benefits, including TTD benefits, must be determined. As the board explained,

> "the determination of entitlement to temporary disability, based on an evaluation of the medical record, pertains to temporary disability authorization related to the accepted compensable injury portion of the claim at the time of claim closure."

Further, the record on reconsideration is sufficient for the board to review the duration of TTD benefits. ORS 656.268 provides mechanisms that ensure that the necessary information to evaluate the notice of closure is available in the record.[6] As such, we do not perceive any reason why the record on review would impact the board's ability to evaluate the effective end date of TTD benefits in a notice of closure proceeding, as opposed to in the claim denial review process.

---

[6] ORS 656.268(6)(a)(A) provides that, on reconsideration, the record may include a deposition of the claimant about the claimant's condition at the time of claim closure. In addition, the worker, the insurer, or the self-insured employer "may correct information in the record that is erroneous and may submit any medical evidence that should have been but was not submitted by the attending physician or nurse practitioner authorized to provide compensable medical services * * * at the time of claim closure." ORS 656.268(6)(a)(B). The director is also authorized to, if necessary, "require additional medical or other information with respect to the claims and may postpone the reconsideration for not more than 60 additional calendar days." ORS 686.268(6)(b).

Moreover, SAIF's concern that separate review tracks could lead to inconsistent decisions is adequately addressed by the doctrine of issue preclusion. For example, in *SAIF v. Ricker*, 184 Or App 53, 55-56, 55 P3d 532 (2002), SAIF issued a denial of the claimant's combined condition effective December 31, 1998, because the accepted injury ceased to remain the major contributing cause of the claimant's disability as of that date. The claimant requested a hearing, and the ALJ upheld the claim denial. The claimant failed to appeal so the claim denial became final by operation of law. Meanwhile, SAIF issued a notice of closure concluding that the claimant was medically stationary as of December 31, 1998. The claimant sought reconsideration, and the Appellate Review Unit issued an order granting TTD benefits through June 28, 1999. The ALJ and the board subsequently upheld that decision. SAIF sought judicial review, arguing that the board failed to address the preclusive effect of the unappealed order upholding the denial as of December 31, 1998. We agreed, reversing and remanding for reconsideration because the board should have addressed whether the unappealed order preclusively determined that the claimant was not substantively entitled to TTD benefits after December 31, 1998.

To summarize, although the statutory scheme provides separate review tracks for claim denials and notices of closure, the statutes allow for the duration of TTD benefits to be subject to review on reconsideration of a notice of closure. Neither the state of the record on reconsideration nor the possibility of inconsistent decisions undercut evidence of the legislative intent apparent in ORS 656.268 that the board was authorized to do what it did in this case.

Affirmed.